DAVID BOYD, Individually, and as Administrator of SAMUEL BOYD, Deceased, Appellant, *v.* ROBERT BOYD et al., Respondents.

WITNESS — ADMISSIBILITY OF EVIDENCE TENDING TO CONTRADICT OR IMPEACH. Where a witness upon an issue whether an assignment to his nominee of a sheriff's certificate of redemption is a forgery, testifies that he furnished the money to the assignor to make the redemption, and subsequently paid the judgment upon which he redeemed, evidence that theretofore, in proceedings supplementary to execution against him, he had testified that the property in question was not held in trust for him, and that he did not know the assignor, is admissible to contradict or impeach his testimony at the trial, since, if true, it furnished a reasonable basis for the inference that the assignment was genuine.

*Boyd* v. *Boyd,* 21 App. Div. 361, reversed.

(Argued May 14, 1900; decided October 2, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 20, 1897, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the Court of Common Pleas for the city and county of New York, on trial at an Equity Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward W. S. Johnston* for appellant. The court erred in receiving the testimony of the defendants Elise Boyd and Joseph J. Carberry. The testimony that was given by them

was within the inhibition of section 829 of the Code of Civil Procedure. The objection was properly raised, and the error in receiving the testimony was in no respect cured on the trial. (*Benner* v. *A. D. Co.*, 134 N. Y. 159; *S. S. G. Co.* v. *Potthast*, 80 N. W. Rep. 517; *Morgenthau* v. *Walker*, 2 Misc. Rep. 246; *Becker* v. *M. R. Co.*, 87 Hun, 317; *Alexander* v. *Davis*, 42 W. Va. 465; *Chaffee* v. *Goddard*, 42 Hun, 147; *Howell* v. *Manwaring*, 3 N. Y. S. R. 455; *Garvey* v. *Owens*, 37 Hun, 498; *Boughton* v. *Bogardus*, 35 Hun, 198; *Matter of Weeks*, 23 App. Div. 151.) The court erred in receiving the testimony of Robert Boyd over the objection and exception of the plaintiff that it was within the inhibition of section 829 of the Code. (*Mills* v. *Kernochan*, 3 N. Y. S. R. 152; *Williams* v. *Davis*, 7 Civ. Pro. Rep. 283; *Viall* v. *Leavens*, 39 Hun, 291; *Stuart* v. *Patterson*, 37 Hun, 113; *Heyne* v. *Doerfler*, 124 N. Y. 505; *Hill* v. *Heermans*, 17 Hun, 470.) The court improperly rejected proof of the execution by Robert Boyd of plaintiff's Exhibit 6 (an alleged assignment of a certificate of redemption) for identification, and of the handwriting of Robert Boyd therein, and improperly refused to admit plaintiff's Exhibit 6 for identification in evidence, together with evidence of a comparison by competent witnesses of that proved handwriting of Robert Boyd and the handwriting in the signature of the disputed paper. (*Beach* v. *City of Elmira*, 34 N. Y. S. R. 523; *Bell* v. *Merrifield*, 109 N. Y. 203; *Blair* v. *Bartlett*, 75 N. Y. 150; *Bruen* v. *Hone*, 2 Barb. 587; *C. P. P. & Mfg. Co.* v. *Walker*, 114 N. Y. 7; *W. G. L. Co.* v. *Y. G. L. Co.*, 14 Wkly. Dig. 95; *Shearer* v. *Field*, 6 Misc. Rep. 189; *Hadcock* v. *O'Rourke*, 17 N. Y. S. R. 894; *Patrick* v. *Shaffer*, 94 N. Y. 423; *Taylor* v. *Taylor*, 63 Hun, 303.) The trial court erred in rejecting the offer of the plaintiff to prove that the defendant Robert Boyd had forged the signature of Samuel Boyd to this plaintiff's Exhibit 6 for identification, and that that forged paper was one of three papers which Robert Boyd had ordered his attorney to prepare, which he had handed back to the attorney as having been executed by Samuel Boyd,

and all of which papers purport to bear the same date, and to have the same handwriting of Robert Boyd as to the filling in of the date thereof, and purport to be witnessed by the same subscribing witness and proved by that subscribing witness before the same notary public, and which three papers included this document forged by Robert Boyd, and the paper in dispute in this action, along with a third, and that Robert Boyd had admitted that this Exhibit 6 for identification so proved to have been forged by Robert Boyd was not signed by Samuel Boyd, and that such forged signature bore the same indicia, and was stroke for stroke, line for line, and dot for dot the same as the alleged signature to the disputed paper herein. (*People* v. *Everhardt,* 104 N. Y. 59; *People* v. *Lyon,* 1 N. Y. Cr. Rep. 401; *Burks* v. *State,* 6 S. W. Rep. 302; *Fay* v. *Lynch,* 17 Wkly. Dig. 349; *Rex* v. *Voke,* R. & R. 531; *Reg.* v. *Proud,* L. & C. C. C. 97; *Reg.* v. *Richardson,* 2 F. & F. 343; *Commonwealth* v. *Tuckerman,* 10 Gray, 173; *Commonwealth* v. *Shepard,* 1 Allen, 575; *Commonwealth* v. *Eastman,* 1 Cush. 189.)

*Henry Daily, Jr.,* for respondents. There was no error in the reception or rejection of evidence. (*Moore* v. *N. Y. E. R. R. Co.,* 126 N. Y. 671; *Springer* v. *Bien,* 128 N. Y. 99; *Stokes* v. *Stokes,* 155 N. Y. 591; *Shaw* v. *Broadbent,* 129 N. Y. 114; *Weed* v. *Burt,* 78 N. Y. 191; *Webb* v. *Buckelew,* 82 N. Y. 555; *People* v. *Johnson,* 38 N. Y. 63; *Campbell* v. *Consalus,* 25 N. Y. 613; *Cauhape* v. *Parke Davis & Co.,* 121 N. Y. 152; *House* v. *Lockwood,* 137 N. Y. 259.) None of the testimony received was within the inhibition of section 829 of the Code of Civil Procedure. (*Pinney* v. *Orth,* 88 N. Y. 447; *Lewis* v. *Merritt,* 98 N. Y. 206; *Wadsworth* v. *Heermans,* 85 N. Y. 639; *Nay* v. *Curley,* 113 N. Y. 575; *Heir* v. *Grant,* 47 N. Y. 278; *Hard* v. *Ashley,* 117 N. Y. 606; *Nearpass* v. *Gilman,* 104 N. Y. 506; *Simmons* v. *Havens,* 101 N. Y. 427; *Ten Eyck* v. *Craig,* 62 N. Y. 406.)

O'BRIEN, J. This action was brought under section 1473 of the Code by the plaintiff, in his capacity as adminis-

trator and sole heir at law of a deceased person, who, it is alleged, was, at the time of his death, entitled to a sheriff's deed of certain real estate described in the complaint, and which had been sold by the sheriff on execution and redeemed by the deceased as a junior judgment creditor. The relief prayed for is that the sheriff, who was made a party defendant, be adjudged to execute a deed to the plaintiff of the lands, and that a certain paper purporting to be an assignment of the certificate of redemption by the deceased in his lifetime, which it is alleged is a false and forged paper, be adjudged to be null and void, and that a deed to the person named as assignee in the false paper, and by him to the other defendants, be declared fraudulent and void.

The controversy arises upon the following facts: On March 5th, 1872, a judgment was recovered against the defendant Robert Boyd and another, at the suit of the People, as sureties upon a forfeited bail bond. The premises described in the complaint were sold upon execution issued on this judgment January 11, 1873, the defendant Boyd then having the title. The sheriff issued a certificate to the purchaser, which was duly recorded.

On the 9th of April, 1874, the premises sold were redeemed by Samuel Boyd, the deceased, as a judgment creditor of Robert Boyd, the owner, upon a judgment duly entered April 4th, 1874, by payment of the purchaser's bid and interest. The usual certificate of redemption was delivered to the deceased by the sheriff, and thereupon he became entitled to a deed of the lands so redeemed, but died on the 16th of April, 1883, intestate, without having received any deed.

The plaintiff alleges in his complaint that on April 2d, 1883, the defendants Robert Boyd and Elise Boyd, his wife, and Joseph J. Carberry, conspiring together with intent to cheat and defraud the deceased, Samuel Boyd, who then held the certificate of redemption, and his heirs and legal representatives, of all their right, title and interest in and to said premises so redeemed, and to a conveyance thereof from the sheriff, made or caused to be made, and did produce and utter as true,

a false, forged, fabricated and fraudulent paper writing, purporting to be an assignment of said certificate of redemption from said Samuel Boyd to the defendant Elise Boyd, wife of Robert Boyd; that this paper writing purported to have been executed by the deceased and witnessed by the defendant Carberry as a subscribing witness, in fact was never so executed and was in fact a forgery; that in pursuance of said conspiracy and with the same fraudulent intent, the defendants Robert Boyd and wife and Carberry did, on the 26th of January, 1885, present this false writing, purporting to be an assignment of the certificate of redemption, to the sheriff and caused him to execute and deliver to said Elise Boyd, as assignee of the certificate, a conveyance of the lands so redeemed which, with the false writing above mentioned, was recorded in the clerk's office of the county.

It is further alleged in the complaint that the defendants, with the same fraudulent intent and purpose, caused the defendant Elise to convey the lands to the defendant Carberry on September 7th, 1885, by deed recorded December 3d, 1885, and that with a like purpose and intent the latter conveyed to the defendant Robert Boyd by deed dated September 14th, 1885, and recorded December 3d, 1885. The latter was in possession of the premises at the time of the commencement of this action.

It is quite apparent that the controversy turned upon the character of the paper which purported to be an assignment by the deceased to Elise, the wife of Robert Boyd, of the certificate of redemption. If that was a genuine paper the sheriff had already conveyed the premises to the party holding the certificate of redemption, and the plaintiff had no case. If, on the contrary, it was a false paper, never in fact executed by the deceased, neither that nor the conveyance based upon it constituted any obstacle to the plaintiff's right as administrator and heir at law of the deceased. The issue between the parties was, therefore, one of fact concerning the true nature of the instrument which purported to transfer to Elise all the rights of deceased under the certificate of redemption.

The trial court determined this issue in favor of the defendants and dismissed the complaint, and the judgment has been affirmed on appeal.

There was evidence before the trial judge tending to show that this was a false paper, but clearly it was not so strong or conclusive as to require him to find and decide that it was. The finding at the trial in favor of the defendants on the facts is conclusive on this court, and there is nothing before us but the questions of law raised during the trial by exceptions. In a case of this character we ought not to interfere with the judgment below for rulings at the trial which, though technically wrong, were immaterial and could not, in any fair view of the case, have prejudiced the defeated party. But the exceptions appearing in this record raise important questions of law which must have affected the whole course of the trial, and, as decided by the learned trial judge, must have operated to the prejudice of the plaintiff. This will plainly appear when we refer to some of the rulings and have pointed out their bearing upon the merits of the case.

1. The plaintiff's counsel produced a paper purporting to be an assignment by the deceased of another certificate of redemption of other lands of Robert Boyd, sold upon execution and redeemed by the deceased as a judgment creditor. This paper is dated the same day as the one in question in this action, is attested by the same subscribing witness and proved in the same manner. The record contains photographic copies of both papers. It is evident that they were drafted by the same person, and the signature of the deceased to each is apparently in the same handwriting, and they differ in appearance only in the fact that the one so produced is left in blank for the name of the assignee to be inserted. The counsel also produced a judgment record of an action in the Superior Court of the city of New York, in which the defendant Robert Boyd was plaintiff and the plaintiff in this action was the defendant in his individual and representative capacity. It appeared from the pleadings that Robert claimed the benefit of the assignment in blank of the certificate, and that he was

virtually, under the assignment, entitled to the lands described in the same and to the deed of the same, while the defendant in his answer insisted, as he insists in this case, that the deceased had never made any assignment of the certificate of redemption, and that the right to the deed was in him as the personal representative and heir at law of the deceased. It appeared from the findings of the court in the case that it was decided in the action that the deceased never signed or executed the paper, and that the signature purporting to be his was not genuine. The counsel offered the paper and the judgment record in evidence, but both were excluded upon the objection of the defendants, to which ruling an exception was taken. The learned counsel for defendants attempted to justify this ruling upon the ground that the paper and the judgment roll in the former action related to another parcel of land redeemed by the deceased, and had no relation to the land in question. But the fact that the papers related to different parcels of land was wholly immaterial, since the competency of the proof offered did not depend upon the identity of the property described in the two papers, but upon other considerations. The proof, if admitted, would show or tend to show that a transaction precisely similar to that which is called in question in this action between the same parties, or some of them, was tainted with the same vice which is alleged against the transaction involved in this action. It tended to prove that the defendants at least attempted, by means of false papers, made at the same time and in the same way, to transfer to themselves another portion of the estate of the deceased which the plaintiff represents. It is argued by the learned counsel for the plaintiff that the transaction excluded by the rulings of the court was proof of the conspiracy charged in the case at bar, and that the paper offered, purporting to have been executed by the deceased, was a proper standard by which to determine, under the statute, the genuineness of the signature to the paper which is the foundation of the defendants' title in this case.

It may be that the proof offered was admissible on one or

more of the grounds thus urged, but we do not think it necessary to consider that feature of the argument, since we are of opinion that the question may be viewed in a broader light and determined by a safer and more simple rule.

The paper purporting to be an assignment of another certificate of redemption held by the deceased, when taken with the judgment record, tended to prove a contemporaneous fraud by the same parties upon the same estate, similar in all respects to the one which the plaintiff has assailed in this action. It was none the less a fraud upon the deceased and upon the plaintiff, because it also involved forgery, or the making and uttering of a false paper. In all cases where it is alleged that a party has acquired the property of another through some fraudulent device, the charge may be supported by proof of contemporaneous acts of the same character. (*Benham* v. *Cary*, 11 Wend. 83; *Jackson* v. *Timmerman*, 12 Wend. 299; *Cary* v. *Hotailing*, 1 Hill, 311; *Hall* v. *Naylor*, 18 N. Y. 588; *Miller* v. *Barber*, 66 N. Y. 558; *Mayer* v. *People*, 80 N. Y. 364; *Van Kleek* v. *Leroy*, 4 Abb. [N. S.] 431.) The paper offered was delivered to the defendant Robert, and in the subsequent suit he asserted title to the property described in it against the present plaintiff. If the plaintiff in the present action could show that the defendants acquired, or attempted to acquire, title to other portions of the property of the deceased by means similar to that charged in the complaint, the proof was competent. Of course it was not conclusive, but it was admissible. The paper itself, when supplemented by the judgment record, did tend to prove that fact. The record of the present case, now before us, does not contain the former judgment in full. It does contain the pleadings and the findings of the court so far as they relate to the character of the paper which was involved in that action, and enough appears to show that the proof offered was improperly excluded. The record was not pleaded or offered as a former adjudication between the parties of any issue involved in this case, but simply as evidence of a material fact, and as such it was admissible.

31

The grounds upon which evidence of this character is admitted have not always been stated by courts in the same language, but I think there is neither reason nor authority to support the proposition that it must always be limited to cases where motive is material. But, even if that were so, it cannot be said that intention or motive was immaterial in this case. The plaintiff had the right to show if he could a fraudulent intent, purpose or motive on the part of the defendant to make and utter the spurious paper, since that had some bearing on the question whether in fact he actually made it. Proof of other and similar fraudulent acts is admissible when it appears that there is such a connection between the transactions as to authorize the inference that both frauds are part of one general scheme, and where transactions of a similar character by the same party are closely connected in point of time, and otherwise, the inference is reasonable that their purpose and origin are the same. The reason for receiving evidence of this character was very clearly stated in a recent case as follows : " Acts which are part of one general scheme or plan of fraud, designed and put in execution by the same person, are admissible to prove that an act which has been done by some one was in fact done by the person who designed and pursued the plan, if the act in question is a necessary part of the plan." (*Fowle* v. *Child,* 164 Mass. 213 ; *N. Y. M. L. Ins. Co.* v. *Armstrong,* 117 U. S. 591 ; *Jordan* v. *Osgood,* 109 Mass. 457.)

2. Robert Boyd was sworn as a witness in his own behalf, and was asked who furnished the money to the deceased which was paid to redeem from the sheriff's sale. The witness was permitted, against the plaintiff's objection and exception to the competency of the inquiry, to answer that he furnished the money himself, though he was the defendant in the judgment under which the redemption was made. The witness was also permitted to testify that he never signed the name of the deceased to the disputed paper, although the question was objected to by plaintiff's counsel as within the inhibition of section 829 of the Code, which objection was overruled by the

court and the plaintiff's counsel excepted. He was also asked if he had not paid the judgment under which the deceased redeemed before his death, and, against the plaintiff's objection that the question was .incompetent, he was permitted to answer that he had. When it appeared from the cross-examination of the witness that these transactions were with the deceased, the plaintiff's counsel moved to strike out the answer as within the prohibition of section 829 of the Code. The motion was denied and the plaintiff's counsel excepted. This ruling was error. The witness was the principal defendant in the action, deriving his claim of title from the deceased under the disputed assignment of the certificate of redemption. He was permitted to testify to what was clearly a personal transaction with the deceased against the plaintiff, who was his personal representative and heir at law. (*Grey* v. *Grey*, 47 N. Y. 552.) Inasmuch as this testimony tended to show that the deceased was never the beneficial holder of the certificate, and that the witness at all times was, the deceased being simply a trustee for his benefit, the answers were quite material.

The statute excludes all testimony on the part of a surviving or interested party " concerning a personal transaction " with the deceased. This prohibition cannot be evaded by any indirection, as by offering testimony of some negative fact. When it appears that there was a personal transaction and that the testimony offered tends to show either what did take place between the parties or what did not, it must be excluded by force of the statute so long as it concerns the transaction or justifies an inference as to what it really was. The statute may be as effectually violated by testimony of a negative character as by affirmative proof of what actually took place. The testimony of Robert that he never signed the name of the deceased to the paper in controversy illustrates the manner in which a prohibitive statute may be evaded by the ingenuity of counsel. Of course, if the plaintiff's theory of the case be the true one, then there never was any personal transaction with the deceased, since it is alleged that the deceased never executed or delivered the paper and that it is a spurious

instrument. But on the other hand the defendants insist that it is the genuine act of the deceased and that he signed and delivered it at the date specified. Hence, upon the defendants' theory there was a personal transaction, which consisted in the execution and delivery to the wife of the witness, under whom he claimed title, of a written assignment of the certificate of redemption. The witness gave testimony to prove that transaction. If it did not prove or tend to prove it, then it was not admissible at all. But when he swore that he never signed the paper his testimony tended to prove that the deceased did, since there was no claim that any one else had anything to do with the transaction. His testimony, under the circumstances, had nearly the same probative value as if he had sworn, as the other witnesses did, that he was actually present at the time and saw the deceased affix his signature to the instrument. The testimony, therefore, was concerning a personal transaction with the deceased, since it was an attempt to prove it by negative instead of affirmative testimony. If the witness was not competent to prove what took place at that transaction by direct or affirmative testimony he was not competent to prove it by indirect or negative testimony. (*Clift* v. *Moses, infra ; Walsh* v. *McArdle*, 78 Hun, 411.) His wife swore, and it was admitted, that he was present when the paper was signed by the deceased as a genuine instrument. Hence, if it be true that such a transaction ever took place, the witness participated in it and could not testify concerning it either affirmatively or negatively.

The defendant Elise Boyd, wife of the defendant Robert Boyd, was sworn generally as a witness for the defendants, and the defendant Carberry was a witness in his own behalf. Both testified that they were present and saw the deceased sign the disputed paper. The question which elicited these answers was, in each case, objected to as within the inhibition of section 829 of the Code; but the objection was overruled and the plaintiff's counsel excepted. This testimony should have been excluded. They were not only defendants in the action, but parties under or through whom the defendant

Robert Boyd claimed title, and they testified against the plaintiff, the administrator, to what was clearly a personal transaction with the deceased. Elise was the person to whom the disputed assignment was made, and she is named as the assignee in the paper. Carberry was the subscribing witness, and both were present when they claimed the deceased executed the instrument. They testified to a transaction which the deceased, had he been alive, could have denied or qualified. It was, therefore, a personal transaction, within the meaning of the Code.. (*Holcomb* v. *Holcomb*, 95 N. Y. 316; *Clift* v. *Moses*, 112 N. Y. 426; *In re Eysaman*, 113 N. Y. 62; *Adams* v. *Morrison*, Id. 152; *In re Dunham*, 121 N. Y. 575; *Devlin* v. *Greenwich Sav. Bank*, 125 N. Y. 756; *Petrie* v. *Petrie*, 126 N. Y. 683; *In re Bernsee*, 141 N. Y. 392; *Martin* v. *Hillen*, 142 N. Y. 140; *In re Callister*, 153 N. Y. 294.) The testimony was clearly forbidden by the statute, and after it was admitted there was no distinct ruling that cured the error within the principle sanctioned by this court. (*Blashfield* v. *Empire State Telephone & T. Co.*, 147 N. Y. 520.)

The testimony of the three defendants did not come within the exception recognized in *Pinney* v. *Orth* (88 N. Y. 447), and the cases which follow it. The rule laid down in that case precludes the surviving party to a personal transaction with a deceased person from testifying to what passed between them personally, or did not pass, as against the personal representative of the deceased, but does not preclude the survivor from testifying to extraneous facts or circumstances which tend to show that a witness who has testified affirmatively to such a transaction has testified falsely, or that it is impossible that his statement can be true, as, for instance, that the survivor was at the time of the alleged transaction absent from the country and, therefore, that the interview could not have occurred. In this case the three surviving parties to the transaction were allowed to testify to what did or did not take place, and if their testimony was accepted it was nearly conclusive upon the court on the issue whether the paper was genuine or spurious. I have not overlooked the circumstance

that at a subsequent stage of the trial the learned trial judge stated that; of his own motion, he had stricken out all the testimony of these two witnesses with respect to the actual execution of the paper, although the testimony of Robert, which has been referred to, was not included in the statement. But as soon as that statement was made the defendants' counsel recalled both of them and proceeded to prove under like objection and exception that the signature to the paper was the genuine signature of the deceased from their knowledge of the handwriting. After having sworn that they were present and saw the deceased sign the paper the inquiry as to *their opinions* based upon knowledge of handwriting would seem to be quite perfunctory. When a witness has testified to a fact from personal knowledge and observation it must be expected that he will testify to the same fact as matter of opinion. The witnesses were so committed that it was possible for them to express but one opinion on the subject, if, indeed, it could be called an opinion at all, in any legal sense. The process of separating what a witness swears to from personal knowledge and observation, from what he subsequently asserts in the same direction as matter of opinion, is too subtle and unsafe to be used by either the jury or the court in determining the weight and value of evidence. It is very clear that the learned judge gave considerable weight to the testimony of these two witnesses, and it is quite difficult to say that he rejected what they stated as matter of personal knowledge and adopted what they asserted as mere matter of opinion, or that the witnesses themselves observed any such refined distinction.

3. It will be remembered that the defendant Robert Boyd was permitted to testify that he furnished the money to the deceased to make the redemption, and subsequently paid the judgment upon which he redeemed. This testimony tended to show that the deceased held the title and the certificate as trustee for Robert. If true, it furnished a reasonable basis for the inference that the assignment was genuine, since it was the duty of the deceased to transfer the property to the real

beneficiary. The plaintiff had the right to contradict the testimony of Robert in that regard, since the court evidently regarded it, as in fact it was, very material. The plaintiff's counsel produced the written examination of Robert taken in proceedings supplementary to execution, filed in September, 1883, and offered to show by it that he then declared that none of the property sold on execution was held in trust for him and that he did not know the deceased. The testimony offered was excluded and plaintiff's counsel excepted. We think it was admissible, since it contained the admissions or declarations of the witness tending to contradict or impeach his testimony at the trial, to the effect that he furnished the money for which the certificate was issued and paid the judgment. In other words, if his testimony in that regard contained in the written examination was true, there was no secret trust for his benefit, represented by the certificate in the hands of the deceased.

There are some other exceptions in the case that might be difficult to answer, but since they may be obviated upon another trial it is unnecessary to consider them. It may be quite true, as intimated by the court below, that the charge stated in the complaint is unjust to the defendants and has its origin in improper motives; but if that be so we cannot believe that the rights of the parties will suffer from a full investigation conducted according to the established rules of evidence for the ascertainment of truth.

The judgment of the Appellate Division and of the Special Term should be reversed and a new trial granted, costs to abide the event.

HAIGHT, MARTIN and LANDON, JJ., concur upon the third ground stated in the opinion; WERNER, J., concurs in the result; GRAY, J., dissents; PARKER, Ch. J., not sitting.

Judgment reversed, etc.